UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Dooner,                                          Case No. 16-cv-1939 (RHK/SER)

          Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Pui Yuen,

          Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss.[1] For the following reasons, the Motion is denied.

**BACKGROUND**

In 2010, Plaintiff James Dooner, a resident of Minnesota, met Defendant Pui Yuen in Las Vegas. A year later, Yuen moved to Minnesota to live with Dooner, but the two did not get married. (Compl. ¶ 6.)

In December 2012, Dooner added Yuen as a joint owner to an account at BMO Harris. (Id. ¶ 7.) Yuen claims that she and Dooner opened the account together.[2] (Yuen

---

[1] The time for bringing a motion to dismiss under Rule 12(b)(6) has long past. See Fed. R. Civ. P. 12(b)(6) (providing that motion "must be made before pleading . . . ."). Defendant filed an answer in July 2016. (Docket No. 7.) Her motion is therefore untimely. But in her reply memorandum, Defendant asks the Court to consider the Motion as one for judgment on the pleadings, which may be brought "after the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). Because the standards of review for the two types of motions are identical, considering the instant Motion under Rule 12(c) does not prejudice Plaintiff, and the Court will accede to Defendant's request.

[2] Dooner seems to admit that he and Yuen opened the account together, contrary to the

Decl. ¶ 6.) Dooner deposited money into the account and contends that Yuen did not deposit any money into the account. (Compl. ¶ 8.) In January 2013, the couple ended their romantic relationship. (Id. ¶ 9.) Yuen asserts that they remained romantically involved until the fall of 2013, and maintained a friendship and a business relationship until 2016. (Yuen Decl. ¶¶ 10-11.)

On January 31, 2013, Yuen wired $298,000 out of the account. (Compl. ¶ 10.) Dooner claims that he did not authorize Yuen to make the withdrawal. (Id.) In November 2013, Dooner began giving Yuen a monthly support check, although she had moved back to Las Vegas at the time. (Id. ¶ 13.) In June 2014, Dooner signed a document Yuen drafted that required him to continue to send her monthly financial support. (Id. ¶¶ 16-17, Ex. B.) Dooner sent Yuen money through the end of 2015. (Id. ¶ 18.)

Dooner contends that he did not object to the January 2013 funds withdrawal because Yuen's name was on the account. Only after Yuen threatened to sue him for failing to provide her with half the proceeds from a sale of property in Minnesota did Dooner bring this lawsuit, claiming that Yuen's withdrawal of the money constituted conversion, civil theft, and unjust enrichment. He also sought a declaratory judgment that the document requiring him to pay Yuen monthly financial support is not an enforceable contract.

---

allegations in the Complaint. (Dooner Decl. (Docket No. 36) ¶ 4 ("Ms. Yuen and I jointly opened a BMO Harris bank account on December 27, 2012.").)

Yuen counterclaimed for breach of contract, promissory estoppel, unjust enrichment, palimony, and a declaratory judgment that the document is an enforceable contract. (Docket No. 7.) Dooner moved to dismiss the counterclaims, and in October 2016, Judge Richard H. Kyle determined that there was no consideration for the alleged contract and that Yuen's other claims failed as a result. Judge Kyle granted Dooner's motion to dismiss Yuen's counterclaims. (Docket No. 16.) Yuen relies heavily on the alleged contract in her arguments here, but there is no contract—Judge Kyle determined that it was unenforceable and that determination is law of the case.

Yuen now seeks a dismissal of Dooner's Complaint, contending that because she was a joint owner of the BMO Harris account, she was entitled to withdraw whatever funds she chose.

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6) or for judgment on the pleadings under Rule 12(c), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); see also Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."). The Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott, 901 F.2d at 1488.

Here, Dooner does not dispute that Yuen had joint ownership over the BMO Harris account and could withdraw money at any time. But "[t]he right to withdraw and the right of ownership . . . are separate and distinct rights." Shourek v. Stirling, 621 N.E.2d 1107, 1110 (Ind. 1993). Thus, merely because Yuen could withdraw money does not mean that she owned the money.

Minnesota has adopted the uniform Multi-Party Accounts Act, Minn. Stat. §§ 524.6-201 et seq. Although Yuen contends that the MPAA applies only in probate situations—it is known as the "Poor Man's Will," Savig v. First Nat'l Bank of Omaha, No. 09cv132, 2009 WL 1955476, at *6 (D. Minn. July 6, 2009) (Ericksen, J.)—the MPAA does not limit its reach solely to probate. Rather, the statute provides that a "joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Minn. Stat. § 524.6-203. Only when one of the parties to the joint account dies does ownership of the funds revert to the surviving joint owner. Id. § 526.204. Thus, the Minnesota Supreme Court has determined that a creditor cannot garnish funds in a joint account that were contributed by an individual not subject to the garnishment order. Enright v. Lehmann, 735 N.W.2d 326 (Minn. 2007).

Yuen claims that the MPAA gives her the authority to exercise ownership over the funds because it provides that the MPAA's provisions "concerning beneficial ownership as between parties . . . are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." Minn. Stat. § 524.6-202. She

4

points to an FDIC document stating that "[a]ll co-owners must have equal rights to withdraw deposits from the accounts" (Yuen Decl. Ex. 5), and to an FDIC publication stating that "a joint account is a deposit account owned by two or more people who have equal rights to withdraw 100 percent of the deposits and close the account." (Id. Ex. 6.)

But again, Yuen improperly conflates the right to withdraw funds with ownership over those funds. "Although the deposit agreements clearly gave [Yuen] the right to withdraw funds from the account, the deposit agreements alone do not create an ownership right in the funds that were withdrawn." Shourek, 621 N.E.2d at 1110. Yuen may have had the right to withdraw the funds, but Dooner owned the funds and can object to the withdrawal. "'If the creator of the joint account . . . could be impoverished by the acts of the joint tenant over which the creator has no control . . . there is great risk to the creator of the joint account.'" Enright, 735 N.W.2d at 332 (quoting Deutsch, Larrimore & Farnish, P.C. v. Johnson, 848 A.2d 137, 143 (Pa. 2004).) In other words, by enacting the MPAA, the Minnesota legislature "did not intend to allow a holder of an interest in a joint account to defeat the ownership rights of other joint owners with a unilateral act." Deutsch, 848 A.2d at 143. "Absent a [] gift by [Dooner], [Yuen] had no ownership interest at the time that [she withdrew the money]; at most she had a mere expectation of a right of survivorship." Id. Yuen's Motion to Dismiss must be denied.

The MPAA provides that Yuen can establish that Dooner intended her to have unfettered access to the money by clear and convincing evidence. Minn. Stat. § 524.6-203. Yuen has submitted evidence in this regard, such as Dooner's signing a document more than a year after the challenged withdrawal that purported to require Dooner to give

5

Yuen even more money. But there is other evidence that supports Dooner's claim that he did not intend for Yuen to withdraw the money. Thus, Dooner's request that the Court sua sponte grant summary judgment in his favor is inappropriate. (Pl.'s Opp'n Mem. (Docket No. 35) at 1.) A jury must determine Dooner's intent.

**CONCLUSION**

Yuen has not established that Dooner's claims fail as a matter of law. Accordingly, **IT IS HEREBY ORDERED that** Yuen's Motion to Dismiss (Docket No. 26) is **DENIED**.

Dated: July 25, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge